**Pachucy v. Nutrition Inc.**

*Carl J. Guagliardo,* for plaintiffs.
*Michael J. Betts,* for defendant.

NEALON, *J.,* July 30, 2009—A Lackawanna County vendor who served as the Mid Valley School District's food services provider for 20 years has filed this tort action charging his competitor with intentional interference with prospective contractual relations. The local contractor maintains that his competitor wrongfully secured the 2008-2009 food services contract with the Mid Valley School District after it directly violated the bid solicitation procedures by improperly providing complimentary dinners, cruises and other forms of entertainment to seven school directors and their family members during taxpayer financed conferences in San Francisco and Orlando.

The defendant competitor has presented preliminary objections seeking to dismiss this case for failure to adequately plead the essential elements of a claim for intentional interference with prospective contractual

relations. Plaintiff has adequately alleged a reasonable likelihood or probability that he would have obtained the food services contract at issue since the complaint avers that (1) the plaintiff and the defendant were the only contract bidders, (2) the plaintiff's existing contract had a remaining one-year renewal option available, (3) the bid solicitation procedures expressly prohibited the school directors from accepting "anything of monetary value" from a potential contractor, (4) a slim majority of the school board subjectively graded the competing bids submitted by the plaintiff and the defendant, and awarded the food services contract to the defendant shortly after receiving the improper gifts, and (5) the plaintiff suffered lost contractual profits as a result of the defendant's wrongful conduct. Consequently, for the reasons set forth below, the preliminary objections will be overruled.

## I. FACTUAL BACKGROUND

Plaintiff George Pachucy d/b/a Food Contract Services and defendant Nutrition Inc. are both engaged in the business of providing food contract services to school districts. (Docket entry no. 7, ¶¶1-3, 7.) During the 20-year period from 1988 to 2008, Pachucy acted as the food services provider for Mid Valley School District. (*Id.,* ¶9.) In 2004, Pachucy was awarded the Mid Valley food services contract for the period from July 1, 2004 to June 30, 2005 pursuant to a written agreement which provided for four one-year renewals of the contract by mutual agreement of the parties. As of July 2007, Mid Valley and Pachucy had exercised three of the four one-year renewals, thereby extending Pachucy's food services contract through June 30, 2008. (*Id.,* ¶¶10-15.)

Pachucy avers that after July 2007, three Mid Valley School Directors and their family members attended the National School Boards Association (NSBA) conference in San Francisco and "accepted a gift from defendant Nutrition Inc. consisting of a dinner cruise." (*Id.*, ¶¶16-17.) Pachucy submits that the complimentary dinner cruise constituted "a gift of monetary value offered by defendant Nutrition Inc., a potential food services contractor" for Mid Valley. (*Id.*, ¶18.) Subsequent to that NSBA conference, the Mid Valley School Board decided, by a majority vote, "to advertise for new requests for proposal for the food services contract" for the 2008-2009 school year, "despite the existence of one more year of available contract renewal" with Pachucy. (*Id.*, ¶19.)

One month later, seven Mid Valley School Directors and 10 of their family members attended another NSBA conference in Orlando, Florida, at which time they reportedly "accepted gifts of monetary value from defendant Nutrition Inc." (*Id.*, ¶¶20-21, 24.) Specifically, Pachucy maintains that seven Mid Valley School Directors and 10 of their family members "accepted a gift from defendant Nutrition Inc., consisting of a luau dinner show held at Discovery Cove," and that "at least six" Mid Valley School Directors "along with at least four of their family members accepted a gift from defendant Nutrition Inc., consisting of a dinner held at the Hard Rock Hotel, paid for and attended by defendant Nutrition Inc., a potential contractor." (*Id.*, ¶¶27-28.)

Within one month of their return from the Orlando conference, the Mid Valley School Directors "published an advertisement for requests for proposal for the food services contract for the following five years." (*Id.*, ¶29.)

Pachucy and Nutrition were the only two food services contractors who submitted bids in response to that advertisement. (*Id.,* ¶30.) The written bid solicitation procedures for the Mid Valley food services contract expressly state that the Mid Valley School Directors "shall neither solicit nor accept gratuities, favors, nor anything of monetary value from contractors nor potential contractors" of the school district. (*Id.,* ¶¶29, 32, exhibit B, p. 4 of 56.) In July 2008, "by a 5-4 majority vote, the Mid Valley Board of Education awarded the 2008-2009 food services contract, with options for four one-year renewals, to Nutrition Inc." (*Id.,* p. 31.)

Pachucy asserts that "[t]he Mid Valley Board of Education accepted personal gifts of monetary value from a potential contractor, Nutrition Inc., whose bid was received shortly after the gifts were accepted, in direct contravention of the express terms of [Mid Valley's] bid solicitation and food services contract with Nutrition Inc." (*Id.,* ¶34.) On October 28, 2008, Pachucy filed a complaint against Mid Valley and Nutrition seeking declaratory judgment relief, as well as monetary damages from Nutrition. In Count I of the complaint, Pachucy alleged that Nutrition "submitted a bid proposal for the food services contract when it knew its actions in providing board members with gifts of monetary value were in direct contravention of both the bid proposal and subsequent contract," while Mid Valley "accepted and acted upon a bid proposal from Nutrition Inc. when seven board members had direct and recent knowledge" that Nutrition's bid violated Mid Valley's bid solicitation requirements. (*Id.,* ¶¶40-41.) For that reason, Pachucy originally requested a judicial declaration (1) voiding Nutrition's bid and the Mid Valley-Nutrition contract and

(2) directing that the food services contract be awarded to Pachucy as "the only remaining responsible bidder." (*Id.,* ¶46.)

In Count II of the complaint, Pachucy advances a claim against Nutrition only for intentional interference with Pachucy's actual or prospective contractual relationship with Mid Valley. To that end, Pachucy avers that by virtue of Pachucy's remaining one-year contractual renewal for the July 1, 2008 to June 30, 2009 school year, Pachucy "had an actual and prospective contractual relationship with the Mid Valley School District" through 2009. (*Id.,* ¶48.) Pachucy alleges that Nutrition improperly provided "gifts of monetary value to members of the Mid Valley Board of Education and their family members . . . without privilege or justification" with the specific intent to induce Mid Valley not to perform or renew its contract with Pachucy. (*Id.,* ¶¶49-52.) Finally, Pachucy posits that Nutrition's wrongful conduct has caused Pachucy to suffer "pecuniary loss" and lose "contractual profits." (*Id.,* ¶¶53-54.)

Mid Valley and Nutrition filed preliminary objections seeking to dismiss Pachucy's request for declaratory judgment relief on the ground that a disappointed bidder who is not a taxpayer residing within the geographic boundaries of the governmental defendant does not have standing to challenge the award of a public contract to another bidder. See *Quinnan v. Parking Authority of City of Scranton,* 102 Lacka. Jur. 632, 639-40 (2001); *Petty v. Scranton School District,* 101 Lacka. Jur. 137, 139 n.1 (1999). Nutrition also demurs to Pachucy's tort claim and asserts that Pachucy has failed to adequately plead the essential elements of a cause of action for inten-

tional interference with actual or prospective business relations. (See docket entry nos. 8-9, 16.) On April 24, 2009, Pachucy filed a "praecipe for partial discontinuance" voluntarily withdrawing any claims for declaratory judgment relief, and in the process, dismissing Mid Valley from this lawsuit. (*Id.*, no. 21.) Thus, the sole issue remaining to be decided concerns the viability of Pachucy's claim against Nutrition for intentional interference with contractual relations.

## II. DISCUSSION

### (A) *Standard of Review*

In support of its demurrer to Pachucy's tort claim, Nutrition contends that Pachucy has neglected to allege "an existing contractual relationship" or a "reasonable likelihood or probability of a prospective contractual relationship" with Mid Valley so as to state a cognizable claim for interference with existing or prospective contractual relations. (Docket entry no. 17, p. 7.) Nutrition further argues that Pachucy has failed to properly plead resulting damages inasmuch as Mid Valley's School Board "was free to renew or not renew [Pachucy's] contract for the 2008-2009 school year as it saw fit." (*Id.*, p. 8.) Pachucy counters that there was a reasonable likelihood of a prospective contractual relationship with Mid Valley at the time of Nutrition's tortious conduct since Pachucy "had an already existing, decade long contractual relationship with Mid Valley," including an option to renew for the 2008-2009 school year. (*Id.*, no. 20, pp. 10-11.) Pachucy submits that the bidding process allowed "the school directors to 'grade' each of the bidders by subjectively assigning points" for certain factors and that

Nutrition provided those school directors with prohibited gifts in an effort to unduly influence their subjective rating system. (*Id.,* pp. 8-9.)

When considering preliminary objections, the court must determine whether it is clear and free from doubt, based upon the facts alleged in the complaint, that the plaintiff is unable to state a cause of action under the governing law. *Commonwealth ex rel. Corbett v. Locust Township,* 600 Pa. 533, 542, 968 A.2d 1263, 1269 (2009). In making that determination, all material facts averred in the complaint, and all reasonable inferences that can be drawn from those averments, are admitted as true. *Lugo v. Farmers Pride Inc.,* 967 A.2d 963, 966 (Pa. Super. 2009). Preliminary objections in the nature of a demurrer "may only be sustained where it is established with certainty that recovery is not possible." *Quest Land Development Group LLC v. Township of Lower Heidelberg,* 971 A.2d 540, 543 (Pa. Commw. 2009). If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Association of Settlement Companies v. Department of Banking,* 977 A.2d 1257 (Pa. Commw. 2009).

### (B) *Intentional Interference With Contractual Relation*

To establish a cause of action for intentional interference with an existing contractual relationship, a plaintiff must demonstrate: (1) the existence of a contractual relationship between the plaintiff and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the

absence of privilege or justification on the part of the defendant; and (4) actual damage to the plaintiff as a result of the defendant's conduct. *Phillips v. Selig,* 959 A.2d 420, 429 (Pa. Super. 2008), *appeal denied,* 600 Pa. 764, 967 A.2d 960 (2009). The tort of intentional interference with a prospective contractual relation requires proof of: (1) a prospective (rather than an existing) contractual relation between the plaintiff and a third party; (2) purposeful action on the part of the defendant specifically intended to prevent a prospective relation from occurring (as opposed to harm an existing relation); (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage resulting from the defendant's conduct. *Blackwell v. Eskin,* 916 A.2d 1123, 1127-28 (Pa. Super. 2007); *Reading Radio Inc. v. Fink,* 833 A.2d 199, 211 (Pa. Super. 2003), *appeal denied,* 577 Pa. 723, 847 A.2d 1287 (2004).

Pachucy initially averred that he "had an actual and prospective contractual relationship with the Mid Valley School District for the school years 2004 through 2009." (Docket entry no. 7, ¶48.) Nutrition demurred to Pachucy's tort claim on the basis that Pachucy cannot establish an existing or prospective contractual relation with Mid Valley beyond June 30, 2008, nor can Pachucy demonstrate actual damage resulting from Nutrition's conduct. In Pachucy's brief in opposition to the preliminary objections, Pachucy tacitly concedes the absence of an existing contractual relation which Nutrition allegedly intended to harm and instead argues that he has properly averred a prospective contractual relation with Mid Valley that Nutrition specifically intended to prevent from occurring. (*Id.,* no. 20, pp. 10-11.) Therefore, we need only address whether Pachucy has sufficiently al-

leged the elements of a cause of action for intentional interference with a prospective contractual relation.

With regard to Nutrition's first contention, Pennsylvania courts have recognized that "[d]efining a 'prospective contractual relationship' can be difficult." *Phillips,* 959 A.2d at 428. In *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979), the Supreme Court of Pennsylvania noted that the phrase "has an evasive quality, eluding precise definition" and "is something less than a contractual right, [but] something more than a mere hope." *Id.* at 209, 412 A.2d at 471. Similarly, in finding that the plaintiff had sufficiently alleged a prospective contractual relation, the court in *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971) reasoned:

"It is true that there could be no guarantee of [the third party's] reaction to any offer that might be submitted, and it of course was under no compulsion to deal with either [plaintiff] or [defendant]. But anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman." *Id.,* at 480, 272 A.2d at 898-99. Accord, *Infosage Inc. v. Mellon Ventures L.P.,* 896 A.2d 616, 627-28 (Pa. Super. 2006).

In determining the "reasonable likelihood or probability" of a prospective contractual relationship, courts must apply an objective standard. *Thompson Coal Company,* 488 Pa. at 209, 412 A.2d at 471 (citing *Glenn, supra* at 481, 272 A.2d at 899); *Phillips, supra.* To satisfy that objective test for a prospective contractual relation, Pa-

chucy must ultimately prove that "but for" the wrongful acts of Nutrition, there was a reasonable probability that Pachucy would have obtained Mid Valley's food services contract for the 2008-2009 school year. See *Blackwell,* 916 A.2d at 1128 ("our Supreme Court has explained that the rule to be applied . . . is whether 'but for the wrongful acts of the defendant,' it is reasonably probable that the plaintiff would have established a contractual relation."); *Santana Products Inc. v. Bobrick Washroom Equipment Inc.,* 401 F.3d 123, 140 (3d Cir. 2005) ("To determine whether Santana had a prospective contractual relation with [the third party], Santana must show that an issue of fact exists as to whether, but for Bobrick's 'fire scare' campaign, there was a reasonable probability that Santana would secure a contract from [the third party].""), *cert. denied,* 546 U.S. 1031 (2005).

By way of illustration, the contractor (Santana) in *Santana Products* sought to bid on a contract for high density polyethylene (HDPE) toilet partitions and provided the project architect with samples of HDPE. Bobrick, a competing manufacturer of toilet partitions composed of phenolic, furnished the project architect with a videotape that reportedly demonstrated that the HDPE partitions could be a fire hazard. After viewing the videotape and conducting a fire test on samples of HDPE and phenolic, the architect changed the contract specifications to phenolic partitions, and the contract was ultimately awarded to another supplier of phenolic partitions, Penner Partitions. *Santana Products,* 401 F.3d at 140.

Santana sued Bobrick for intentional interference with prospective contractual relations and alleged that it was reasonably probable that Santana would have obtained

the contract but for Bobrick's "fire scare" tactics since Santana had almost 60 percent of the HDPE market and the contract initially specified HDPE partitions. In affirming the dismissal of Santana's claim, the U.S. Court of Appeals for the Third Circuit noted that Santana had simply been denied an opportunity to bid because Bobrick had ostensibly persuaded the architect to change the contract specification to phenolic. More importantly, the *Santana Product* court concluded:

"However, even if Santana had had the opportunity to bid, one of the two other suppliers of HDPE partitions— Capital Partitions or Comtec—could still have obtained the contract. There is no evidence that Santana would be the winning bidder. The problem with obtaining a government contract in this situation is demonstrated by the fact that [the third party] did not in fact award the contract to Bobrick." *Id.,* at 141. Accord *Infosage Inc.,* 896 A.2d at 628.

In contrast, Pachucy and Nutrition were the only bidders for the Mid Valley food services contract in question, and if Nutrition had not been awarded that contract by the school directors' narrow vote of 5 to 4, Pachucy would have obtained that contract. It is true that Pachucy's longstanding contractual relationship with Mid Valley, standing alone, is insufficient to establish a prospective contractual relationship. See *Acumed LLC v. Advanced Surgical Services Inc.,* 561 F.3d 199, 213 (3d Cir. 2009) ("a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship."); *Phillips,* 959 A.2d at 429 ("an assumption of a *future* contractual relationship based upon evidence of an *existing* contractual relationship . . . alone is insufficient as a matter of law to estab-

lish a 'prospective contractual relationship.'"). (emphasis in original) However, Pachucy has averred more than a past contractual relationship as the basis for a reasonable likelihood or probability of a prospective contractual relationship. Pachucy asserts, and we must accept as true for purposes of a demurrer, that Nutrition's improper gifts to seven of the Mid Valley School Directors and their family members caused those school directors to skew their subjective grading of the competing bids and inappropriately award the food services contract to Nutrition by a single vote plurality.[1] Pachucy further maintains that but for that misconduct by Nutrition, there was a reasonable probability that Pachucy would have secured the food services contract for the 2008-2009 school year. Based upon the totality of the circumstances averred in the complaint, Nutrition has not established that it is clear and free from doubt that Pachucy will be unable to prove a prospective contractual relationship under the applicable law.

Nutrition's remaining objection regarding the fourth criterion may be summarily denied. Pachucy distinctly

---

1. Nutrition only challenges the first and fourth elements of the "intentional interference with prospective contractual relation" test and does not contend that its actions in providing complimentary dinners and entertainment to school directors and their families were privileged or justified, presumably because the bid solicitation procedures expressly prohibit any directors from accepting "anything of monetary value" from potential contractors. See *Accumed,* 561 F.3d at 215 (stating that under the Pennsylvania standard derived from the Restatement (Second) of Torts §768, a competitor improperly interferes with anther's existing or prospective contractual relationship if, inter alia, it employs "wrongful means."); *Phillips,* 959 A.2d at 430 (examining the Restatement approach and stating "that the central inquiry is whether the defendant's conduct is sanctioned by the 'rules of the game' which society has adopted").

avers in the complaint that Nutrition's tortious actions caused Pachucy to suffer "pecuniary loss" and lose "contractual profits" that he would have realized if he had been awarded the 2008-2009 contract. Contrary to Nutrition's contention, Pachucy has in fact averred actual damage as a result of Nutrition's conduct. Therefore, Nutrition's preliminary objections will be overruled.

### ORDER

And now, July 30, 2009, upon consideration of the preliminary objections of defendant Nutrition Inc., the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Defendant's preliminary objections to the complaint are overruled; and

(2) Within the next 20 days, defendant Nutrition Inc. shall file a responsive pleading to the complaint.