**Pittsman v. Perrone**

C.P. of Lackawana County, No. 11 CV 1236.

*Kevin J. Fitzgerald,* for plaintiff.
*Neil E. Wenner,* for defendants.

NEALON, *J.,* April 11, 2013—Relying upon the expiration of the one-year statute of limitations under 42

Pa.C.S.A. § 5523(1), the healthcare defendants' motion for summary judgment seeks to dismiss plaintiff's claims for defamation and tortious interference with business relations on the grounds that both causes of action are predicated upon the same operative facts and are, therefore, governed by the same one-year limitations period. Plaintiffs binding judicial admissions reflect that the gist of his tortious interference claim is defendants' alleged defamatory acts of concluding that plaintiff was not physically qualified to operate commercial motor vehicles and communicating that medical diagnosis to his prospective employer. Since plaintiff has not averred an independent, non-defamatory basis for his tortious interference claim, the defamation and tortious interference actions are both subject to the one-year statute of limitations and were clearly time-barred when this suit was filed. Therefore, defendants' motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

On February 23, 2011, plaintiff, David Pittsman ("Pittsman"), filed this civil action against defendants, Dr. David Perrone ("Perrone") and Redi-Care Medical Center of Taylor, Inc. ("Redi-Care"), based upon a medical examination that Dr. Perrone conducted of Pittsman in connection with his application for employment with Bolus Freight. Pittsman avers that on February 24, 2009, he "was a licensed over the road truck driver in possession of a Class A driver's license" when he "made application for [a] position as an over the road truck driver with Bolus Freight." (Docket entry no. 1 at ¶¶ 5-6). At "the request of Chris Burris of Bolus Freight, [Pittsman] reported for a

physical examination at Redi-Care...and was examined by Dr. David Perrone." (*Id.* at ¶ 7). During that examination, "but prior to Dr. Perrone's determination regarding [Pittsman's] ability to perform his duties as an over the road truck driver with a Pennsylvania Class A driver's license, Dr. Perrone made a phone call to Chris Burris regarding [Pittsman's] status." (*Id.* at ¶ 8). Pittsman has admitted that he was not present during this alleged phone call, nor does he have "first hand knowledge" of what was purportedly discussed at that time.: (Deposition of David Pittsman dated 8/13/12 at pp. 113-114).

Pittsman asserts that "[a]fter Dr. Perrone's conversation with Chris Burris of Bolus Freight on February 24, 2009, Dr. Perrone refused to certify [Pittsman] as able to drive a commercial vehicle without a Skill Performance Evaluation ("SPE") certificate indicating that [Pittsman] did not meet the standards of 49 C.F.R. [§]391.41."[1] (Docket entry no. 1 at ¶ 9). Pittsman further contends that another medical

---

1. The United States Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA") has promulgated regulations which "establish minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers." *Bailey v. Amerigas Propane. Inc.*, 2013 WL 1121384, at * 5 (D. Md. 2013). Section 391.41 (a)(1)(i) of Title 49 of the Code of Federal Regulations provides that a commercial motor vehicle operator "must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so...." 49 C.F.R. §§ 391.41(a)(1)(i). Section 391.41(b) states that a person "is physically qualified to drive a commercial motor vehicle" if [s]he does not have a loss or an impairment of an arm, hand, foot, or leg "or has been granted a skill performance evaluation certificate pursuant to § 391.49." 49 C.F.R. §§ 391.41(b) (1) and (2)(ii). 49 C.F.R. § 391.49 sets forth the procedure by which an individual may seek an SPE certificate from the FMCSA. If the SPE certificate is granted by the FMCSA, it "allows the driver to continue driving a commercial vehicle despite being physically unqualified." *Bailey, supra.*

group previously certified him for employment as a truck driver without the necessity of an SPE certificate. (*Id.* at ¶ 10). He maintains that Dr. Perrone's refusal to properly certify him to drive a commercial vehicle resulted in his "inability to secure employment with Bolus Freight" and required him "to seek employment elsewhere" with Crete Carrier/Shaffer Trucking whose closest terminal is located ninety miles from Pittsman's residence. (*Id.* at ¶¶ 11-12). Pittsman alleges that on March 16, 2009, another physician examined him at the request of Crete Carrier/ Shaffer Trucking and "determined that [Pittsman] met the standards of 49 C.F.R.[§]391.41." (*Id.* at ¶¶ 13-14).

In his complaint, Pittsman originally advanced three causes of action. Count I entitled "tortious interference with business relations," avers, in its entirety, that Dr. Perrone "wrongfully interfered with [Pittman's] relationship between [Pittsman] and Bolus Freight in that [Dr. Perrone] and Redi-Care acted intentionally, knowingly, and without justification or privilege to cause Chris Burris and Bolus Freight not to perform the agreement with [Pittsman] to provide employment." (*Id.* at ¶ 16). In count II, Pittsman sets forth a claim for "defamation" and alleges that Dr. Perrone and Redi-Care "knowing the truth of the matters alleged above and intended (sic) to injure [Pittsman], deprive him of his good name, and further intending to cause [Pittsman] to be denied employment by Bolus Freight, maliciously, wickedly, and illegally made and published a writing containing scandalous, defamatory, and libelous statements concerning [Pittsman] and his ability to perform his profession as an over the road

20

truck driver, to wit, indicating that [Pittsman] was not physically able to perform his duties as a truck driver without an SPE certificate, knowing that [Pittsman] had been operating as an over the road truck driver with a Class A Pennsylvania Driver License for a period of years prior to his examination by Defendant Perrone and that the prior physicians that examined [Pittsman] did not require the SPE."[2] (*Id.* at ¶ 18). Pittsman also asserted a cause of action for "corporate liability" in count III, (*Id.* at ¶¶ 21-25), but by order dated July 7, 2011, Judge Vito P. Geroulo dismissed that claim with prejudice. (Docket entry no. 16). In his sole prayer for relief in support of his tort claims, Pittsman "requests judgment in his favor and against defendants in an amount in excess of three hundred and fifty thousand dollars ($350,000.00) together with costs."[3] (Docket entry no. 1 at p. 7).

---

2. The defamatory "writing" that Dr. Perrone apparently published is the "Medical Examination Report for Commercial Driver Fitness Determination" dated February 24, 2009, which is attached to the complaint. That report reflects that Pittsman completed a "health history" in which he identified a physical limitation of "weakness to left hand d[ue] to stroke at birth." (Docket entry no. 1, exhibit A at p. 2). Dr. Perrone's physical examination of Pittsman revealed left sided "hemiparesis" and "some weakness of hand & foot." (*Id.* at p. 1). His stated diagnosis in the report was "D.O.T.P.E. [Department of Transportation Physical Examination] Fail," and his note reflects that Pittsman was "given SPE packet." (*Id.*).

3. Pursuant to Pa.R.C.P. 1021(b), any pleading demanding relief for unliquidated damages may not seek judgment in a specific sum. *Larry Pitt & Associates v. Long*, 716 A.2d 695, 703 n. 9 (Pa. Cmwlth. 1998). Pa.R.C.P. 1021(c) dictates that in those counties having rules governing compulsory arbitration, the plaintiff must aver whether the amount of damages sought is above or below the jurisdictional amount for compulsory arbitration under the applicable local rule. *See Flynn v. Casa DiBertacchi Corp.*, 449 Pa. Super. 606, 618-619, 674 A.2d 1099, 1105 (1996). Under Local Rule 1301(a)(2), the compulsory arbitration limit in Lackawanna County is $50,000.00. *See* Lacka. Co. R.C.P. 1301(a)(2).

Dr. Perrone and Redi-Care have filed a motion for summary judgment seeking to dismiss Pittsman's defamation claim as time-barred by the one-year limitations period in 42 Pa.C.S. § 5523(1). (Docket entry no. 24 at ¶¶ 8-9). The movants argue that since Pittsman's claim for tortious interference with business relations is premised upon the same defamatory conduct that allegedly occurred on February 24, 2009, count II of the complaint should also be dismissed based upon the same one-year statute of limitations. (*Id.* at ¶¶ 10-15). Pittsman's brief in opposition to the motion for summary judgment only addresses the tortious interference with business relations claim, and posits that his "tortious interference claim is not based directly upon the defamation claim and, therefore, the two year statute of limitations applies" to that cause of action. (Docket entry no. 26 at p. 4). Following the completion of oral argument on February 26, 2013, the motion for summary judgment was submitted for a decision.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

"Summary judgment is appropriate if a plaintiff's cause of action is barred by the statute of limitations." *Matharu v. Muir*, 29 A.3d 375, 381 (Pa. Super. 2011); *Fraynert v. Delaware and Hudson Railway Company. Inc.*, 2013 WL 551711, at * 5 (Lacka. Co. 2013). To secure summary judgment, the moving party bears the burden of proving that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Stimmler v. Chestnut Hill Hospital*, 602 Pa. 539, 554, 981

A.2d 145, 154 (2009). In making that determination, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Rock v. Rangos*, 61 A.3d 239, 250 (Pa. Super. 2013); *Sedor v. Community Medical Center*, 16 Pa. D. & C. 5th 193, 202 (Lacka. Co. 2010).

## (B) DEFAMATION CLAIM

Dr. Perrone and Redi-Care first seek to dismiss Pittsman's defamation claim premised upon "scandalous, defamatory, and libelous statements concerning [Pittsman] and his ability to perform his profession as an over the road truck driver." (Docket entry no. 25 at p. 4 (quoting plaintiff's complaint at ¶ 18)). The movants argue that any such claim is clearly barred by the one-year limitations period for libel and slander actions. (Docket entry no. 25 at p. 4). As noted above, Pittsman's responsive brief does not address the timeliness of his cause of action for defamation.

Defamation "is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." *Cogley v. Duncan*, 32 A.2d 1288, 1289 n. 1 (Pa. Super. 2011); *Davis v. PPL Sustainable Energy Fund*, 2011 WL 7272291, at *6 (Lacka. Co. 2011). Libel involves the malicious publication of written or printed material which tends to blacken a person's reputation or expose the person to public hatred, contempt or ridicule. *Sobel v. Wingard*, 366 Pa. Super. 482, 486, 531 A.2d 520, 522 (1987); *Koldjeski*

*v. Colombo*, 2009 WL 5124027, at * 3 (Lacka. Co. 2009). Slander consists of spoken words that are "intended to lower the view of the target of the communication in the community or...to deter third persons from associating with the target." *Reardon v. Allegheny College*, 926 A.2d 477, 484 (Pa. Super. 2007), *app. denied*, 596 Pa. 755, 947 A.2d 738 (2008).

Pittsman's complaint appears to aver actions for slander (the telephone conversation with Mr. Burris) and libel (the medical report that was transmitted to Bolus Freight) which allegedly occurred on February 24, 2009.[4] Pittsman alleges that "prior to Dr. Perrone's determination regarding [Pittsman's] ability to perform his duties as an over the road truck driver with a Pennsylvania Class A driver's license, Dr. Perrone made a phone call to Chris Burris regarding [Pittsman's] status." (Docket entry no. 1 at ¶ 8). According to Pittsman, "[a]fter Dr. Perrone's conversation with Chris Burris of Bolus Freight on February 24, 2009, Dr. Perrone refused to certify [Pittsman] as able to drive a commercial vehicle without a Skill Performance Evaluation ("SPE") certificate indicating that [Pittsman] did not meet the standards of 49 C.F.R. [§]391.41." (*Id.* at ¶ 9).

In his defamation count, Pittsman identifies the defamatory communication as Dr. Perrone's oral and written statements "that [Pittsman] was not physically

4. The only materials that have been submitted as the summary judgment record are Pittsman's complaint and pages 113 to 114 of his deposition in which he conceded that his sole interaction with Dr. Perrone and Redi-Care took place on February 24, 2009. (Docket entry no. 24, exhibits A and B). No other discovery materials or exhibits have been submitted for review.

able to perform his duties as a truck driver without a[n] SPE certificate...." (*Id.* at ¶ 18). Although not distinctly averred, it is presumed that Pittsman contends that Dr. Perrone advised Chris Burris by telephone that Pittsman was physically unable to work as a commercial motor vehicle operator without an SPE certificate. *See Jaindl v. Mohr*, 432 Pa. Super. 220, 229, 637 A.2d 1353, 1358 (1994) (defamation complaint must, on its face, identify specifically what defamatory statements were made, and to whom those statements were made), *aff'd*, 541 Pa. 163, 661 A.2d 1362 (1995). For purposes of addressing the instant motion for summary judgment, it will be assumed that the defamation being asserted by Pittsman consists of Dr. Perrone's determination that Pittsman was physically incapable of operating a commercial vehicle absent an SPE certificate, and his alleged communication of that diagnosis to Mr. Burris at Bolus Freight.

The only incidents which could conceivably serve as the basis for alleged defamation occurred on February 24, 2009. (*Id.* at ¶¶ 5-6, 8-9, 18). Pittsman does not contend that on February 24, 2009, he was unaware of the allegedly false and defamatory determination and concomitant publication of that diagnosis on that date, or the harm that they ostensibly caused him. *See Gallucci v. Phillips & Jacobs, Inc.*, 418 Pa. Super. 306, 313-314, 614 A.2d 284, 288 (1992) (discussing application of discovery rule to defamation action), *app. denied*, 533 Pa. 660, 625 A.2d 1193 (1993). Under section 5523(1) of the Judicial Code, 42 Pa.C.S.A., the statute of limitations applicable to libel and slander claims is one year. *Pro Golf Manufacturing,*

*Inc. v. Tribune Review Newspaper Company*, 570 Pa. 242, 247, 809 A.2d 243, 246 (2002); *Brennan v. Durso*, 2011 WL 2262484, at * 3 (Lacka. Co. 2011). The one-year limitation under section 5523(1) begins to run on the date of the publication of the defamatory matter. *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012), *cert. dismissed*, 133 S.Ct. 1001 (U.S. 2013); *Bellas v. WVHCS Retention Company*, 2012 WL 3961227, at * 6 (M.D. Pa. 2012).

The alleged defamatory publication at issue occurred on February 24, 2009. It is undisputed that Pittsman did not commence this litigation until February 23, 2011, almost two years after the date of the alleged defamatory diagnosis and communication and his awareness of that purported defamation. (Docket entry no. 1). Pittsman's defamation claim was clearly time-barred as of the date that this suit was filed, and as a result, the motion for summary judgment seeking to dismiss that cause of action will be granted.

## (C) TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Pittsman has also asserted a cause of action for "tortious interference with business relations," which is set forth in a single paragraph that reads:

Defendant, Dr. David Perrone, wrongfully interfered with [Pittsman's] relationship between [Pittsman] and Bolus Freight in that defendants Dr. David Perrone and Redi-Care acted intentionally, knowingly, and without justification or privilege to cause Chris Burris and Bolus

> Freight not to perform the agreement with [Pittsman] to provide employment.

(Docket entry no. 1 at ¶ 16). Pittsman does not aver whether he is alleging tortuous interference with an existing contractual relationship, as opposed to a prospective business relation. The elements of a claim for tortious interference with an existing business relationship are: (1) the existence of a contractual relationship; (2) an intent by the defendant to harm the plaintiff by interfering with that relationship; (3) the absence of privilege or justification for such interference; and (4) actual damage resulting from the defendant's improper conduct. *Haun v. Community Health Systems, Inc.*, 14 A.3d 120, 124 (Pa. Super. 2011); *Pachucy v. Nutrition, Inc.*, 9 Pa. D. & C. 5th 105, 112-113 (Lacka. Co. 2009). The tort of intentional interference with a prospective contractual relationship requires proof of: (1) a prospective, rather than an existing, relationship between the plaintiff and a third party; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage resulting from the defendant's conduct. *Foster v. UPMC South Side Hospital*, 2 A.3d 655, 665 (Pa. Super. 2010), *app. denied*, 608 Pa. 647, 12 A.3d 371 (2010); *Pachucy, supra*, at 113. Since Pittsman had merely submitted an application for employment with Bolus Freight, he presumably is asserting a claim for tortious interference with a prospective contractual relationship.

Based upon the holding in *Evans v. Philadelphia Newspapers, Inc.*, 411 Pa. Super. 244, 601 A.2d 330 (1991),

Dr. Perrone and Redi-Care seek to dismiss Pittsman's claim for tortious interference with business relations as time-barred by the one-year statute of limitations. Dr. Perrone and Redi-Care maintain that the "underlying wrong," which serves as the basis for Pittsman's tortious interference claim, is Dr. Perrone's alleged defamatory diagnosis, and publication of the same, to Chris Burris and Bolus Freight on February 24, 2009. (Docket entry no. 25 at p. 5). They argue that *Evans* prevents Pittsman from attempting to circumvent the one-year limitation period by labeling his cause of action as tortious interference when, in essence, it is simply a defamation claim. (*Id.*). Pittsman counters that "Dr. Perrone's refusal to certify" him under 49 C.F.R. § 391.41 "was an independent act" constituting tortious interference, and that "Dr. Perrone's subsequent act in reporting his actions regarding the physical examination to Bolus Freight and their representative is not the gravamen of the tortious interference claim in [Pittsman's] complaint." (Docket entry no. 26 at p. 3).

In *Evans*, the plaintiff sued a newspaper and its reporters for defamation and tortious interference with business relations after they published an article about the plaintiff and his youth training program which allegedly was defamatory. *Evans*, 411 Pa. Super. at 245-246, 601 A.2d at 331. Following the publication of the article, the author "allegedly repeated the false statements orally to students, parents and sponsors of the program," as a result of which "enrollment and funding of [the youth training program] dropped, causing considerable financial burden to [plaintiffs]." *Id.* at 246, 601 A.2d at 332. The trial court

concluded that the tortious interference and defamation claims were both governed and barred by the one-year statute of limitations since both causes of action were premised upon the same defamatory communications. *Id.*

On appeal, the Superior Court phrased the issue of first impression as "whether a tortious interference claim, which is based upon identical allegations set forth in an accompanying defamation claim, should be considered duplicative and, as such, be barred by the one-year statute of limitations applicable to defamation claims." *Id.* at 247-248, 601 A.2d at 332. Recognizing that claims of defamation and tortious interference may constitute separate causes of action, the *Evans* court nonetheless reasoned:

> In a situation such as this, however, where the underlying wrong which the complaint alleges is defamation by publication of a libelous report, and the claim of injury set out in each count springs from the act of publication, the Appellants should not be able to circumvent the statute of limitations by merely terming the claim tortious interference when in essence it is one of defamation, subject to a one-year limitation of action. In such a situation, we will look to the gravamen of the action, not to the label applied to it by plaintiffs.

*Id.* at 249, 601 A.2d at 333. In upholding the dismissal of the tortious interference claim based upon the expiration of the one-year limitations period, the Superior Court "conclude[d] that since Appellants' claim for tortious interference is based upon the alleged false and defamatory

character of the communication complained of, and it is indistinguishable from the claims of libel and slander, the same one-year limitation period should apply to both." *Id.* at 252, 601 A.2d at 334-335.

The issue of which limitations period applies to a particular cause of action is a question of law. *Burger v. Blair Medical Associates. Inc.*, 600 Pa. 194, 201, 964 A.2d 374, 378 (2009) (holding that elements of action for breach of physician-patient confidentiality do not sufficiently overlap with those of an invasion-of-privacy claim, and that if the facts underlying the former claim are sufficiently distinguishable from those supporting the latter cause of action, the breach of confidentiality action is governed by the catch-all two-year limitations period). "To prevent parties from avoiding the one (1) year statute of limitations on defamation claims, where a claim for interference with contractual relations is predicated upon allegedly defamatory statements, the one (1) year statute of limitations for defamation applies." *DeAngelo Brothers, Inc. v. Platte River Insurance Company*, 2010 WL 2635983, at * 7 (M.D. Pa. 2010) (citing *Evans supra*). The determination of the applicable limitations period depends upon whether the tortious interference claim is grounded upon the same conduct which serves as the basis for the defamation action. *Compare Westwood-Booth v. Davy-Loewy, Ltd.*, 1999 WL 219897, at * 5 (E.D. Pa. 1999) (tortious interference claim subject to one-year statute of limitations since it stemmed from defendant's criticism of "plaintiff for engaging an operative with KGB ties."), and *Tucker v. MTS, Inc.*, 1998 WL 67527, at * 3 (E.D. Pa.

1998) (applying one-year limitations period to intentional infliction of emotional distress claim, after finding "[t]here is no independent basis for Tucker's emotional distress claim — the claim exists solely because of various defendants' roles in disseminating allegedly defamatory statements (Shakur's lyrics) and various defendants' allegedly derogatory actions (the filing of the California Actions and Tucker's publicized arrest)."), *aff'd*, 229 F.3d 1139 (3d Cir. 2000), *cert. denied*, 531 U.S. 1078 (2001), *with Manning v. Flannery*, 2012 WL 1111188, at * 12-18 (W.D.Pa. 2012) (tortious interference claim not governed by one-year limitation since it did not hinge upon any defamatory statements), and *Rolite, Inc. v. Wheelabrator Environmental Systems, Inc.*, 958 F. Supp. 992, 1011 (E.D. Pa. 1997) (one-year limitations period not applicable to tortious interference action which was "based primarily upon unfair competition rather than on defamation.").

In a factually analogous scenario, the federal district court in *Hurst v. Beck*, 1992 WL 396592 (E.D. Pa. 1992) held that the one-year statute of limitations applied to the tortious interference with contract claims of a plaintiff who was denied employment following the defendants' communication of defamatory information to the prospective employer. In *Hurst*, a physician who sought employment with Avery Medical Center of Connecticut sued her former hospital employer and two of its department heads who "gave the Avery Medical Center of Connecticut references about her that were both defamatory and based upon information contained in the plaintiff's confidential personnel file." *Id.* at * 1. Dr. Hurst alleged that "[b]ased

upon this information, the Avery Center declined to hire Dr. Hurst." *Id.* In arguing that her tortious interference claim was not subsumed by her defamation action, Dr. Hurst asserted that defendant's "reading of her personnel file, disclosing her CREOG residents scores, relating to the Avery Center that certain other physicians did not like to work with Dr. Hurst, and that the Avery Center should contact Dr. Beck, all constitute separate conduct beyond defamation and therefore is a separate tort." *Id.* at * 5. However, the district court disagreed and concluded that "[w]hile each of the foregoing actions might have had an impact on the plaintiff's business, the 'gravamen' of plaintiff's complaint is that the foregoing conduct was detrimental because of its defamatory character." *Id.* Thus, it held "that the tortious interference with contract claims are controlled by the one-year statute of limitations." *Id.*

In contrast, the Superior Court in *Maverick Steel Company, LLC v. Dick Corporation/Barton Malow*, 54 A.3d 352 (Pa. Super. 2012), *app. denied*, No. 540 WAL 2012 (Pa. April 9, 2013) applied the two-year statute of limitations to a tortious interference claim that was founded upon an independent, non-defamatory course of conduct. The commercial defendant in *Maverick Steel* issued a default notice and sought coverage from its structural steel subcontractor's surety based upon defendant's claim that the subcontractor's delays in performance had jeopardized a stadium construction project. *Id.* at 353. In a series of subsequent letters and meetings, defendant reportedly attempted to extort money from the surety in an effort to subsidize the cost of the stadium project. Defendant's

demands to the surety were "based on [the subcontractor's] financial status and its claim for cost overruns -- not on [the subcontractor's] failure to perform in a timely manner." *Id.* at 356. Neither of the post-default notice letters authored by defendant "contain[ed] any defamatory statements; however, they suggest that [defendant] was targeting [the surety] as a source of funds for the structural steel work." *Id.* at 357.

The subcontractor asserted that defendant had committed trade libel by falsely claiming that the subcontractor was chargeable with delays in performance and, therefore, in default. Additionally, based upon defendant's subsequent actions in attempting to extort funds for the construction project, the surety terminated its relationship with the subcontractor "on projects other than the Stadium Project." *Id.* at 354. As a consequence, the subcontractor lost its contractual relationship on other projects, and for that reason, it also advanced a tortious interference action. *Id.*

The Superior Court noted that "[t]he record contains additional evidence of non-defamatory facts on which Maverick based its interference claim." *Id.* at 357. Hence, it "conclude[d] that the gravamen of Maverick's claim was that [defendant] intentionally and wrongfully engaged in a course of conduct and communications...which were designed to extract money from [the surety] and resulted in the premature termination of [the subcontractor's] relationship with its surety." *Id.* Therefore, it held that the tortious interference "claim as presented is separate and distinct from libel or slander," such that "Maverick's interference claim was subject to the two-year statute of

limitations set forth in 42 Pa.C.S.A. § 5524." *Id.* at 357-358.

In the case sub judice, Pittsman has not alleged any wrongful conduct by Dr. Perrone and Redi-Care other than their determination that Pittsman was not physically qualified to operate a commercial vehicle without the SPE certificate, and their supposed communication of that conclusion to Mr. Burris and Bolus Freight. Those two matters serve as the sole grounds for Pittsman's defamation claim, as well as his tortious interference claim. Pittsman has not identified any other non-defamatory conduct or statement by Dr. Perrone or Redi-Care upon which he bases his cause of action for tortious interference. Inasmuch as "the underlying wrong which the complaint alleges is defamation," and Pittsman's tortious interference claim "springs from the act" of defamation, the same one-year statute of limitations governs both causes of action. *See Evans*, 411 Pa. Super. at 249, 601 A.2d at 333.

Pittsman attempts to avoid application of the one-year limitations period by asserting that Dr. Perrone first concluded that Pittsman required an SPE certificate and later communicated that diagnosis to Bolus Freight. (Docket entry no. 26 at p. 3). However, in his verified pleading, Pittsman attests that Dr. Perrone contacted Mr. Burris "prior to Dr. Perrone's determination regarding [Pittsman's] ability to perform his duties as an over the road truck driver," and that "[a]fter Dr. Perrone's conversation with Chris Burris of Bolus Freight on February 24, 2009, Dr. Perrone refused to certify [Pittsman] as able to drive a commercial vehicle without a Skill Performance

Evaluation...." (Docket entry no. 1 at ¶¶ 8-9). Pittsman's factual statements in his complaint are "judicial admissions and are binding" on him, and are "considered conclusive in the cause of action in which they are made." *Cogley*, 32 A.3d at 1292 (quoting *John B. Conomos, Inc. v. Sun Company*, 831 A.2d 696, 712-713 (Pa. Super. 2003), *app. denied*, 577 Pa. 697, 845 A.2d 818 (2004)). Pittsman is bound by those factual representations set forth in his verified pleading, and may not attempt to retract them in his brief. *See Volk v. Unemployment Compensation Bd. of Review*, 49 A.3d 38, 47 (Pa. Cmwlth. 2012) ("Claimant's explanation that he did not attend the hearing in his appeal because he did not receive notice of the hearing would be similar to a favorable statement made by an attorney in an appeal or brief, which is neither evidence nor a judicial admission on which a factual finding could be made."). Furthermore, Pittsman's proffered reversal of the factual chronology does not alter the ultimate conclusion that his tortious interference claim is entirely dependent upon the alleged defamatory diagnosis and communication. Accordingly, the tortious interference action is clearly barred by the one-year statute of limitations, and the motion for summary judgment will also be granted as to the tortious interference claim.

## ORDER

And now, April 11, 2013, upon consideration of the "motion for summary judgment of defendants, Dr. David Perrone and Redi-Care Medical Center of Taylor, Inc.," the memoranda of law and exhibits submitted by the parties, and the oral argument of counsel, and based upon

the reasoning set forth in the foregoing Memorandum, it is hereby ordered and decreed that:

1. Defendants' motion for summary judgment is granted; and

2. The clerk of judicial records is directed to enter judgment in favor of defendants, Dr. David Perrone and Redi-Care Medical Center of Taylor, Inc., and against plaintiff, David Pittsman, in the above-captioned matter.